UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
PHARMERICA CORPORATION,                         :
                                                :
                                                :    CASE NO. 1:14-CV-00774
            Plaintiff,                          :
                                                :
vs.                                             :    OPINION & ORDER
                                                :    [Resolving Doc. 2]
MARY JO MCELYEA & ABSOLUTE                      :
PHARMACY, INC.,                                 :
                                                :
            Defendants.                         :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this action for breach of contract and misappropriation of trade secrets, Plaintiff PharMerica Corporation moves for a preliminary injunction against Defendants Mary Jo McElyea and Absolute Pharmacy, Inc.[1] Plaintiff PharMerica says that Defendant McElyea has breached a non-competition agreement and may improperly disclose PharMerica's trade secrets while employed at Absolute Pharmacy.[2] For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for a preliminary injunction.

### I. Factual and Procedural Background[3]

Plaintiff PharMerica and Defendant Absolute Pharmacy sell pharmacy products and services to skilled nursing facilities and compete with each other. In the industry, companies often evaluate sales prospects or sales contracts on the number of "beds" a facility has: the number of patients that

---

[1] Doc. 2.
[2] Doc. 2-1.
[3] The Court makes the following factual findings based on the testimony and evidence presented at the hearing on the motion for a preliminary injunction and the docket filings.

Case No. 1:14-CV-00774
Gwin, J.

the facility cares for.

In Ohio, skilled nursing facilities have approximately 100,000 beds that could potentially come under pharmacy and other contracts. But, PharMerica and Absolute Pharmacy actually compete over a much smaller number of beds because of corporate and preexisting relationships between some facilities and pharmacy suppliers. PharMerica and Absolute Pharmacy compete with other firms for approximately 30,000 beds. Defendant Absolute Pharmacy is bigger; Plaintiff PharMerica is smaller. PharMerica serves around 3,000 beds, and Absolute Pharmacy serves around 6,000 beds.

Pharmacy and service providers keep pricing and service information only imperfectly confidential. When pharmacies compete for skilled nursing facility contracts, the facility will often tell the pitching pharmacy the terms of its present relationship, including its current price and other terms. However, certain contract terms are helpful to know for a competing pharmacy, such as the price of services, the termination date, and whether a facility can terminate the relationship with or without cause.

Defendant Mary Jo McElyea worked in sales for an institutional pharmacy company that PharMerica bought in 2011. She began working for PharMerica and agreed to abide by the company's Code of Business Conduct and employee manual. Both documents said that PharMerica's client information was confidential business information that should not be disclosed.

In February 2013, PharMerica gave McElyea a new title: Account Executive. PharMerica sent her a compensation package acknowledgment, a non-compete agreement, and a few other documents. She signed the compensation package acknowledgment and returned it.

She dated the non-compete agreement and printed her name on it, but she did not put her

Case No. 1:14-CV-00774
Gwin, J.

normal signature on it. She says she did not intend to sign it. She does not remember sending the non-compete agreement back to PharMerica, but PharMerica has a copy of the non-compete agreement with the same printed date and McElyea's name printed on it. Although she would have returned the document in February, a Human Resources executive did not sign the agreement until June 2013.

McElyea says that no one told her that signing the non-compete agreement was a condition of her employment. However, her one-time supervisor Josh Bucy says that signing the agreement was a condition of her employment.

The non-compete agreement restricts an employee from working for a competitor for six months and restricts an employee from soliciting current customers and employees for twelve months.[4]

At PharMerica, McElyea was responsible for thirty-to-thirty-five retention accounts and approximately ten new business accounts. While working at PharMerica, McElyea was exposed to pricing information, marketing strategies, and information on how PharMerica packaged services to offer to nursing facilities. She also participated in preparing a list of PharMerica's most vulnerable contracts with facilities. Before leaving PharMerica in April 2014, McElyea attended PharMerica's national sales conference at which she would have heard about marketing and sales strategies and integrated product pitches.

In February 2014, Kevin Fearon, a manager at Absolute Pharmacy, solicited McElyea for a sales position. They reached agreement that McElyea would take a position with Defendant Absolute Pharmacy.

---

[4] Doc. 2-2.

Case No. 1:14-CV-00774
Gwin, J.

After McElyea and Fearon began negotiating the conditions of her employment at Absolute Pharmacy and while McElyea was still working for PharMerica, McElyea copied all of her PharMerica files from her PharMerica-owned computer to a thumb drive. This folder contained client lists, pricing information, and contracts. McElyea says she thought that she was copying the folder entitled "My Documents" and thought at the time that she did not do anything wrong because she had done something similar at her previous jobs.

When she left PharMerica in April 4, 2014, she returned her company equipment but did not return hard copies of client files. Only after this lawsuit was filed, McElyea later returned those documents and the thumb drive.

Absolute employs McElyea as its only salesperson. Because of this lawsuit, she has not yet contacted PharMerica's clients. She has not provided Absolute Pharmacy with any confidential information at this time.

On April 9, 2014, PharMerica sued McElyea and Absolute Pharmacy for breach of this agreement, misappropriation of trade secrets, breach of the duty of loyalty, and tortious interference with business and employment relationships.[5] PharMerica also moved for a temporary restraining order and a preliminary injunction requiring McElyea to comply with the agreement and to stop any release of trade secrets.[6]

On April 16, 2014, the Court denied a temporary restraining order and scheduled the matter for a hearing on the motion for a preliminary injunction.[7]

---

[5] Doc. 1.
[6] Doc. 2.
[7] Doc. 8.

Case No. 1:14-CV-00774
Gwin, J.

On May 8, 2014, the Court heard testimony from Kevin Fearon, Mary Jo McElyea, and Josh Bucy and argument from the parties.[8]

## II. Legal Standard

In deciding whether to grant injunctive relief under Rule 65, the Court considers four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest.[9]  "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met."[10]  An injunction is an "extraordinary remedy" available only when the circumstances "clearly demand it."[11]  "The party seeking the injunction must establish its case by clear and convincing evidence."[12]

## III. Analysis

**A.    Breach of Contract**

The Court finds that an injunction is not appropriate for PharMerica's breach of the non-compete contract claim because PharMerica has failed to show a sufficient likelihood of success on the merits and it cannot show it will suffer irreparable harm.

---

[8] Doc. 15.
[9] *Eden Foods, Inc. v. Sebelius*, 733 F.3d 626, 631 (6th Cir. 2013) (citing *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 590-91 (6th Cir. 2012)).
[10] *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997).
[11] *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)).
[12] *Draudt v. Wooster City School Dist. Bd. of Educ.*, 246 F. Supp. 2d 820, 825 (N.D. Ohio 2003).

Case No. 1:14-CV-00774
Gwin, J.

In order to bring a breach of contract claim, Plaintiff must show a valid contract exists.[13]

In this case, whether Plaintiff can establish that McElyea signed the non-compete agreement or should otherwise be bound by the agreement is uncertain.

McElyea used a cursive signature to sign every document presented to the Court at the hearing. This raises issues whether printing her name on the form signaled McElyea intended to be bound.

Moreover, McElyea testified that no one told her that agreement to the non-compete contract was a condition of employment. And the fact that the Human Resources manager did not sign the contract until four months later also suggests that having a completed non-compete agreement was not a condition of continued employment.

In addition to the questionable existence of a contract, Plaintiff cannot show irreparable injury because the Court will, as explained below, enjoin McElyea, Absolute Pharmacy's only salesperson, from contacting PharMerica's clients until trial.

The Court concludes that these two factors—likelihood of success on the merits and irreparable injury—dispose of the issue and show that an injunction should not issue.[14]

**B.    Trade Secrets**

The Court finds that an injunction is appropriate on this claim.

Plaintiff has shown a likelihood of success on the merits of this claim. "In order to prevail on a misappropriation-of-trade-secret claim, a plaintiff must show by a preponderance of the evidence: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a

---

[13] *Torrance v. Cincinnati Metro. Hous. Auth.*, No. C-081292, 2010 WL 1239555, at * 4 (Ohio Ct. App. Mar. 31, 2010).
[14] *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).

-6-

Case No. 1:14-CV-00774
Gwin, J.

confidential relationship; and (3) the unauthorized use of a trade secret."[15/]

Although some facilities will provide information about pricing to inquiring competitors, PharMerica has attempted to protect its pricing, contract terms, and marketing and product packaging strategies, and PharMerica's competitors are not able to discover all of that information from merely asking facilities.

McElyea learned this information due to her employment relationship with PharMerica and knew PharMerica treated this information as confidential and non-public.

And PharMerica has shown a sufficient likelihood that McElyea will disclose those secrets in the course of her employment with Absolute Pharmacy to warrant an injunction. Although she has not yet disclosed any information and she returned the physical and electronic copies of PharMerica documents she kept, these facts are due to PharMerica's lawsuit and the threat of legal liability. Defendants decided to return the documents and not to contact Plaintiff's clients because of this lawsuit.

The fact that McElyea copied all of the documents from her PharMerica computer, including client lists and PharMerica contracts, suggests that she was planning to use this information for Absolute Pharmacy. McElyea's explanation that she thought she was merely copying "My Documents" is suspect given the shear volume and subject matter of the documents she copied. She copied the PharMerica documents the day before she left PharMerica employment. That no evidence shows that she has disclosed the information, does not mean she did not intend to use these documents for Absolute Pharmacy. Accordingly, Plaintiff has shown a likelihood that McElyea

---

[15/]*Heartlantd Home Fin. Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008) (citing *Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 782 (6th Cir. 2003)).

-7-

Case No. 1:14-CV-00774
Gwin, J.

intended to use confidential information for Absolute Pharmacy.

The fact that she returned the electronic and physical documents also does not mean she no longer has confidential information to use on behalf of Absolute Pharmacy. She has knowledge of confidential pricing information, marketing strategies, and PharMerica's own opinions about which facilities might leave PharMerica.

The use of PharMerica's confidential information would not only damage PharMerica's relationships with its own clients but also PharMerica's relationship with prospective clients that McElyea solicited, because she would have gained confidential insights into PharMerica's strategy for those clients.

Defendants' counsel says that McElyea solicited all of the 30,000 competitive beds in the Ohio region, so an injunction against contacting those facilities she solicited on PharMerica's behalf would prevent her from contacting any new clients for Absolute Pharmacy. This is a speculative argument; McElyea never testified that she had cold called each Ohio or surrounding area facilities. Moreover, PharMerica employed other salespeople. The Court does not credit this argument.

Defendants also argued that unless Plaintiff can prove a non-compete agreement exists, the Court may not enter an injunction unless McElyea has already disclosed trade secrets. But some Ohio courts do permit injunctions in the absence of a non-compete agreement and without a prior instance of disclosure when "the former employee possessed timely, sensitive, strategic, and/or technical information that, if it was proved, posed a serious threat to his former employer's business or a specific segment thereof."[16] The Court finds that PharMerica has shown its confidential information, if disclosed, would pose a serious threat to its business.

---

[16] *Hydrofarm, Inc. v. Orendorff*, 905 N.E.2d 658, 665 (Ohio Ct. App. 2008).

Case No. 1:14-CV-00774
Gwin, J.

For similar reasons, the Court finds that PharMerica has established a threat of irreparable harm. McElyea participated in the preparation of a list of PharMerica's most vulnerable clients and had extensive knowledge of PharMerica's contract terms, termination rights, and marketing strategy. If Absolute Pharmacy could use this confidential information, it could severely damage PharMerica's business. And McElyea's improper file copying shows an intent to use her confidential knowledge on Absolute Pharmacy's behalf. Therefore, the Court finds the threat of irreparable injury suggests an injunction should issue.

The Court also finds that the injunction will not cause substantial harm to others. McElyea and Absolute Pharmacy have voluntarily held off on soliciting PharMerica's clients. An injunction to that effect will merely maintain the status quo until the July 21, 2014, trial date.

Moreover, McElyea is Absolute Pharmacy's only salesperson and is responsible for 6,000 beds. She will be able to serve these accounts for Absolute Pharmacy. At PharMerica with 3,000 beds and with other salespeople to assist her, thirty to thirty-five of her accounts were retention accounts. Limiting McElyea to serving Absolute Pharmacy's current clients and those prospective clients she did not contact on behalf of PharMerica will not substantially harm her.

The Court does not find the public interest will be affected by an injunction.

The Court finds that an injunction against contacting facilities that were or became PharMerica clients until further Court order is appropriate and will protect PharMerica from the possible use of its confidential information by McElyea and Absolute Pharmacy.

The Court also finds that an injunction against contacting facilities that McElyea contacted on behalf of PharMerica until further Court order appropriate and will protect PharMerica's ability to compete in the marketplace. Regarding the restraint of McElyea's contact with facilities that she

Case No. 1:14-CV-00774
Gwin, J.

earlier solicited without achieving a contract for PharMerica, the Court limits the injunction to those McElyea had contact with during the six months before she left Plaintiff PharMerica's employment.

### IV. Conclusion

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for a preliminary injunction. Defendant McElyea must not contact facilities that were or became Plaintiff PharMerica's clients while she was employed at PharMerica until further order of this Court. McElyea also must not contact any facilities that were not PharMerica's nor Absolute Pharmacy's clients and that she solicited on PharMerica's behalf during the six months before she left PharMerica employment until further order of this Court. The injunction will go into effect at the time that Plaintiff posts a $50,000 bond.

IT IS SO ORDERED.

Dated: May 9, 2014

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE